BURNS–KISH FUNERAL HOMES, INC., Thomas J. Burns, individually, and Jean Burns, individually, Appellants–Plaintiffs,

v.

KISH FUNERAL HOMES, LLC, Kevin Kish, individually, and Patricia Kish, individually, Appellees–Defendants,

Patricia Kish, Counterclaimant,

v.

Thomas J. Burns, individually, and Jean Burns, individually, Counter–Defendants.

No. 45A03–0710–CV–486.

Court of Appeals of Indiana.

June 25, 2008.

Gordon A. Etzler, Megan E. Pikula, Gordon A. Etzler & Associates, Valparaiso, IN, Attorneys for Appellants.

F. Joseph Jaskowiak, Kevin G. Kerr, Hoeppner Wagner & Evans LLP, Valparaiso, IN, Attorneys for Appellees Kish Funeral Homes, LLC, Kevin Kish, Individually, and Patricia Kish, Individually.

Gilbert F. Blackmun, Douglas K. Walker, Blackmun, Bomberger, Tyler & Walker, Highland, IN, Attorneys for Appellee Patricia Kish.

## OPINION

VAIDIK, Judge.

### Case Summary

Burns–Kish Funeral Homes, Inc. is a family-run funeral home in northwest Indiana that has been in existence for a century. When part of the Kish family broke off and opened up a competing funeral home down the road from the Burns–Kish Munster, Indiana, location, litigation by part of the Burns family ensued. Burns–Kish Funeral Homes, Inc., Thomas J. Burns, and Jean Burns (collectively

"Plaintiffs") now appeal the trial court's denial of their Verified Application for Preliminary Injunction against Kish Funeral Homes, LLC, Kevin Kish, and Patricia Kish (collectively "Defendants") and the appointment of a custodian over Burns–Kish pending a hearing on Patricia Kish's Counter–Claim for Judicial Dissolution of Burns–Kish. Specifically, Plaintiffs argue that because Kevin Kish was an officer of Burns–Kish, he owed a fiduciary duty to the corporation and that he breached that duty when he made plans to open his own funeral home, Kish Funeral and Cremation Services; that the trial court erred in not considering evidence that Kish Funeral and Cremation Services would cause confusion and irreparable harm to Burns–Kish; and that the trial court erred in appointing a custodian over Burns–Kish because it cited the wrong statute. Because the trial court found that Kevin Kish was not an officer of Burns–Kish and the evidence supports this finding, we conclude that Kevin does not owe a fiduciary duty to Burns–Kish and is free to compete with his former employer. In addition, we conclude that the trial court properly excluded evidence from Plaintiffs' expert on the topic of confusion between the two funeral homes because he was not properly qualified and also properly excluded evidence from Thomas Burns on the topic of confusion. Although the trial court cited the receivership statute in its conclusions, it also cited and properly applied the custodian statute. We therefore affirm the trial court.

### Facts and Procedural History

Thomas Burns and Patricia Kish, siblings in their 70s, own and operate Burns–Kish Funeral Homes, Inc., which is a family-run funeral home that has been in existence in northwest Indiana for a century. Thomas's and Patricia's grandfather,

James E. Burns, founded the funeral home, then known as Burns Funeral Home, in 1908. Burns–Kish has two locations, one in Munster, Indiana, and the other in Hammond, Indiana. Thomas works full-time at Burns–Kish and has an annual salary of $97,000. Patricia also works full-time at the funeral home and has an annual salary of $67,000.

Burns–Kish is organized as an S-corporation under the laws of Indiana and was incorporated in 1968. Currently, Thomas and his wife, Jean Burns, are each 25% shareholders, and Patricia is a 50% shareholder. Thomas's and Patricia's children have worked for Burns–Kish, including Patricia's son, Kevin Kish, who is a licensed funeral director. Kevin began working for Burns–Kish in the mid–1980s, at which time he did not sign an employment agreement with the corporation. Although Burns–Kish is an S-corporation, it is run without regard to corporate formalities. Thomas claims to be the president but does not know when he was elected to that position. He also acknowledges that there have been only two or three board of director and shareholder meetings over the past twenty-five years.[1] This is in violation of the corporation's by-laws, which require annual meetings. *See* Appellee Patricia Kish's App. p. 80, 82. Thomas informally designated Patricia vice-president after the death of her husband Francis Kish in 1988. Although Kevin was told that he was an officer, the corporate records do not reflect this.

Thomas and Patricia equally own the land upon which the funeral homes are located, and Burns–Kish pays them monthly rent. In some years, though, the corporation has been unable to pay them rent, and in one year, Thomas was paid three months of rent, but Patricia was paid only

---

[1]. It appears that the last board of director and shareholder meetings were in 1978.

one month of rent. In addition, since 1998, Thomas has caused $281,224 in Burns–Kish profits to be distributed to him, while Patricia has received only $107,147. Burns–Kish has also paid Thomas's country club dues totaling $44,382, but Patricia has not received a similar benefit. Additionally, Burns–Kish has paid life insurance premiums totaling $58,993.38 on a policy insuring Thomas's life although neither Burns–Kish nor Patricia is the beneficiary of this policy. No board of director or shareholder approval was received for these payments. Since Francis's death, Thomas has operated Burns–Kish as if he were the sole owner, deciding salaries, dividend distributions, when rents are paid, and how assets are allocated.

In 2001, Thomas and Patricia bought vacant land in Munster upon which to build another funeral home but abandoned these plans in 2002 and put the land up for sale. In 2005 and again in January 2006, Kevin made offers to purchase Burns–Kish, but Thomas refused these offers on grounds that they were insulting and told Kevin that if he wanted a funeral home, he should start his own. Thomas did not present these offers to the board of directors or shareholders for consideration. Patricia would have been open to these offers because she has been ready to retire and has felt for some time that it is time for the fourth generation of the family to take over the business.

In early April 2006, Kevin resigned from any position with Burns–Kish other than as an employee. Later that month, Kevin and his wife Judy Kish signed an offer to purchase vacant land located at 10000 Calumet Avenue in Munster. Kevin and Judy purchased the property in August 2006 after obtaining financing. This property is located approximately two miles from the Burns–Kish Munster location. On September ber 1, 2006, Thomas terminated Kevin's employment with Burns–Kish. After Kevin was fired, he sought financing to build a funeral home on his Munster land. He met with his banker to discuss financing for his funeral home, and the loan was closed in early 2007. Construction on Kevin's funeral home, which he planned to call "Kish Funeral and Cremation Services," began in March 2007.

On July 3, 2007, with construction well underway, Plaintiffs filed a Verified Complaint and Application for Permanent Injunction and a Verified Application for Preliminary Injunction against Defendants. Thomas did not consult Patricia, who is a 50% shareholder of Burns–Kish, before filing suit on behalf of the corporation. In the preliminary injunction, Plaintiffs requested the trial court to enjoin Defendants

> from operating and owning a funeral home business within the geographic operating area of Burns–Kish's locations in Hammond and Munster, Indiana, using "Kish" in any manner as the name of their business, including but not limited to signs, advertising, telephone listings, letterhead, correspondence, and any other written or verbal media and/or communication, include a disclaimer stating that said Defendants are not "Burns–Kish Funeral Home, Inc." and that said Defendants are not affiliated in any way with "Burns–Kish Funeral Home, Inc." in all of said Defendants' correspondence, advertising (including signage), contracts or however and wherever said business is promoted. . . .

Appellants' App. p. 155–56. Thereafter, Patricia filed a Counter–Claim against Thomas and Jean requesting judicial dissolution of Burns–Kish and appointment of a receiver. Patricia also alleged that Thomas and Jean breached their fiduciary duty to her.

In September 2007, the trial court held a three-day hearing on Plaintiffs' request for a preliminary injunction and Patricia's request for appointment of a receiver. At the hearing, Plaintiffs claimed that Kevin's use of his surname "Kish" would cause confusion for potential Burns–Kish customers. Thomas introduced evidence that he received a delivery at Burns–Kish that was supposed to go to Kevin's funeral home, that he received calls from families with pre-needs contracts inquiring if Burns–Kish would remain open and honor the contracts, that the local newspaper contacted Thomas about a story for the new location, and that unknown families came in and said they saw he was building a new place.

On October 4, 2007, the court issued extensive Findings of Fact, Conclusions of Law, and Order [2] denying Plaintiffs' request for a preliminary injunction and appointing a custodian over Burns–Kish pending a hearing on Patricia's counterclaim for judicial dissolution of Burns–Kish.[3] Specifically, the court made the following conclusions:

19. Plaintiffs have not shown that they are likely to prevail on the merits under any theory that Kevin cannot operate his funeral home business using the name "Kish Funeral and Cremation Services."

20. Less drastic remedies are available even if confusion were shown to exist, including a disclaimer stating "not affiliated with Burns–Kish Funeral Homes".

19. "He who seeks equity must do equity." *Willig v. Dowell*, 625 N.E.2d

476, 484 (Ind.Ct.App.1993), cited in *Huber v. Sering*, 867 N.E.2d 698, 710 (Ind. Ct.App.2007). Courts will "not entertain a petition for equitable relief when the party requesting such relief refuses and fails to do equity on his part. (Citation omitted.) Also, for the doctrine of laches to apply, the following three elements must be established: inexcusable delay in asserting a right, implied waiver from knowing acquiescence in existing conditions, and circumstances resulting in prejudice to the adverse party." 867 N.E.2d at 710.

19. On analysis of the facts in this case, the Court finds that the doctrine of *laches* acts to preclude the plaintiffs' claim for an injunction in this case. Here, Thomas Burns knew of Kevin Kish's plans to construct a funeral home in Munster at the time Thomas Burns fired him from Burns–Kish, but then Thomas Burns waited until long after Kevin Kish had purchased the real estate and began construction of his new funeral home before he caused the plaintiffs to file suit to prevent Kevin Kish from operating his business in Munster. In the interim, Kevin Kish had committed hundreds of thousands of dollars to his venture, including substantial obligations for bank financing, and had spent much time devoted to his project.

\* \* \* \* \* \*

25. It is necessary and appropriate to appoint a custodian in this case to oversee the day-to-day operation of Burns–Kish Funeral Homes, Inc. so as to protect the assets of the corporation

---

**2.** We note that the trial court's findings of fact and conclusions were particularly good and aided our review of this case.

**3.** Shortly after the trial court denied the preliminary injunction, Kish Funeral Home opened for business on November 20, 2007.

*See* Carolyn Thompson, *Kish Funeral Home open for business,* http://www.nwiti mes.com/articles/2007/12/04/news/lake_county/ doc46abeaa48ac0eba2862573a7000be09b.txt (last visited June 11, 2008).

and the interests of Patricia Kish as a shareholder of the corporation while this litigation is pending, since a) the Plaintiffs have not demonstrated their intent to treat Patricia Kish as an equal shareholder of Burns–Kish Funeral Homes, Inc., b) Patricia Kish is entitled to 50% of all profits distributed and Thomas Burns has not treated her equally in distributions of profit from the corporation, c) Patricia Kish has the right to vote her 50% of shares outstanding regarding the affairs of the corporation, and d) Thomas and Jean Burns commenced this litigation without even consulting Patricia Kish, or calling a corporate meeting to discuss the issues raised in this suit.

\* \* \* \* \* \*

27. Vern Seehausen, CPA, should be appointed custodian, with powers and duties as hereinafter set forth.

Appellants' App. p. 25–26. Plaintiffs now appeal.

### Discussion and Decision

Plaintiffs raise two issues on appeal. First, they contend that the trial court erred in denying their request for a preliminary injunction. Second, they contend that the court erred in appointing a custodian over Burns–Kish pending a hearing on Patricia's counterclaim for judicial dissolution of Burns–Kish.

### I. Preliminary Injunction

The grant or denial of a request for a preliminary injunction rests within the sound discretion of the trial court, and our review is limited to whether there was a clear abuse of that discretion. *Gleeson v. Preferred Sourcing, LLC*, 883 N.E.2d 164, 171–72 (Ind.Ct.App.2008) (citing *Cent. Ind. Podiatry, P.C. v. Krueger*, 882 N.E.2d 723, 727 (Ind.2008); *Ind. Family & Soc. Servs. Admin. v. Walgreen Co.*, 769 N.E.2d 158, 161 (Ind.2002)). When determining whether to grant a preliminary injunction, the trial court is required to make special findings of fact and state its conclusions thereon. *Id.* at 172. When findings and conclusions thereon are made, we must determine if the trial court's findings support the judgment. *Id.* We will reverse the trial court's judgment only when it is clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment. *Id.* Moreover, "[t]he power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare instances in which the law and facts are clearly within the moving party's favor." *Id.* (quotation omitted).

To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence the following: (1) a reasonable likelihood of success at trial; (2) the remedies at law are inadequate; (3) the threatened injury to the movant outweighs the potential harm to the nonmoving party from the granting of an injunction; and (4) the public interest would not be disserved by granting the requested injunction. *Id.* (citing *Krueger*, 882 N.E.2d at 727; *Walgreen Co.*, 769 N.E.2d at 161). If the movant fails to prove any of these requirements, the trial court's grant of an injunction is an abuse of discretion. *Id.* (citing *Walgreen Co.*, 769 N.E.2d at 161).

We first note that the trial court concluded that the doctrine of laches pre-

cluded Plaintiffs' request for a preliminary injunction in this case. *See* Appellants' App. p. 25 (Conclusion Nos. 21 & 22). The equitable doctrine of laches contains three elements: (1) inexcusable delay in asserting a known right; (2) an implied waiver arising from knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party. *Gleeson,* 883 N.E.2d at 179–80 (citing *SMDfund, Inc. v. Fort Wayne–Allen County Airport Auth.,* 831 N.E.2d 725, 729 (Ind.2005)). Laches does not turn on time alone. *Id.* at 180. Unreasonable delay causing prejudice or injury is necessary. *Id.* Prejudice may be created if a party, with knowledge of the relevant facts, permits the passing of time to work a change of circumstances by the other party. *Id.* The trial court reasoned that Thomas knew of Kevin's plans to construct a funeral home in Munster at the time Thomas fired him from Burns–Kish, yet Thomas waited until long after Kevin had purchased the real estate and began construction of his new funeral home before Plaintiffs filed suit to prevent Kevin from operating his business in Munster. In the interim, Kevin spent hundreds of thousands of dollars. Plaintiffs do not challenge this conclusion by the trial court in their Appellants' Brief and thus have waived this issue on appeal.

Waiver notwithstanding, we turn to Plaintiffs' arguments. Plaintiffs make two arguments in their Appellants' Brief regarding how the trial court abused its discretion in denying their request for a preliminary injunction. Plaintiffs' arguments, however, touch on only two of the four requirements for a preliminary injunction: reasonable likelihood of success

at trial and remedies at law are inadequate. Because Plaintiffs bore the burden of proving all four requirements for a preliminary injunction, they should have addressed all four requirements in their brief on appeal. In their reply brief, Plaintiffs did address all four requirements, but we note that no new issues can be raised in a reply brief. *See* Ind. Appellate Rule 46(C); *Clark v. Hunter,* 861 N.E.2d 1202, 1211 n. 4 (Ind.Ct.App.2007) ("[A]n argument raised for the first time in a reply brief is waived."). In any event, we now address Plaintiffs' two main arguments why the trial court abused its discretion in denying their request for a preliminary injunction.

### A. Reasonable Likelihood of Success at Trial

■ Plaintiffs first argue that because Kevin was an officer of Burns–Kish, he owed a fiduciary duty to the corporation and that he breached that duty when he made plans to open his own funeral home. However, the trial court found that Kevin was *not* an officer of Burns–Kish and therefore he owed no duty to the corporation. Specifically, the trial court found:

9. Thomas designated Patricia as Vice-President after the death of Patricia's husband Frank Kish in 1988; no other officers were specifically designated. Kevin Kish was told that he was an officer, but no evidence was presented regarding when he was allegedly elected, the circumstances under which he was allegedly elected, or what office he held. The records of the corporation do not reflect that Kevin Kish is a shareholder, director or officer.[4]

---

4. The outdated corporate records show that the Board of Directors consists of George Burns (Thomas's and Patricia's deceased father), Francis Kish (Patricia's deceased husband), Patricia Kish, Jean Burns, and Thomas Burns, and the corporate officers are George Burns (deceased), Francis Kish (deceased), Thomas Burns, Wallace Oexmann (also apparently deceased), and Patricia Kish. *See* Appellants' App. p. 11–12 (Finding No. 7).

Appellants' App. p. 12. As such, the court concluded:

13. The Court concludes that Kevin Kish did not owe a fiduciary duty to Burns–Kish. First, Kevin Kish was never formally elected as an officer in the corporation, and the corporate records do not reflect that he was an officer. Secondly, there is no evidence to suggest that any type of vote of the corporation's Board of Directors was ever taken to elect Kevin Kish as an officer. No one can recall when (or if) he was elected, or what office of the corporation he purportedly held. Given these circumstances, the Court finds that he did not owe any fiduciary duty to the corporation on the basis that he was an officer of the corporation.

14. Even if Kevin Kish was an officer at one time, he resigned as an officer in April, 2006. At that time, Kevin Kish had merely signed an offer to purchase real estate; the land was not purchased until August, 2006. Such an act did not usurp a corporate opportunity and was not competitive with the corporation. Mr. Kish was free to abandon any plan to build a competing funeral home on the real estate just as Burns–Kish abandoned its plans, in 2002, to build a funeral home on land its owners had purchased. Mr. Kish did not seek a loan for the purpose of building a funeral home until December, 2006 which was several months after he was fired. For these reasons, the Court concludes that even if Kevin Kish was an officer of the corporation, he did not breach any fiduciary duty to the corporation.

*Id.* at 23–24.

Plaintiffs argue that because Kevin resigned his position as an officer with Burns–Kish in April 2006, the trial court's finding that Kevin was not an officer and its conclusion that Kevin therefore did not owe Burns–Kish a fiduciary duty are clearly erroneous. Although Kevin did resign his position, he testified at the hearing in this case that he was not sure if he was actually an officer of the corporation:

Q Okay. Now, as an officer of Burns–Kish, you were the Treasurer of the company, isn't that correct?

A I'm not sure if I was Treasurer or Secretary, sir.

Q Okay. But you did hold an office?

A I was never elected to that position. So other than being told that I was an officer, I would have to say that it's in question.

*Id.* at 35. Kevin also testified, "I submitted a resignation as an officer of the corporation, which I wasn't really sure if I was or wasn't, but I had been informed in the past that I was." *Id.* at 31. Thus, the evidence shows that Kevin resigned to cover his bases and not because he knew that he was an officer of the corporation. The trial court's finding that Kevin was not an officer of the corporation and its conclusion that he therefore did not owe it a fiduciary duty are not clearly erroneous.

 Furthermore, we point out that Kevin did not sign a covenant not to compete with Burns–Kish, and Burns–Kish has not alleged that Kevin violated Indiana's Trade Secrets Act. At all relevant times, Kevin was only an employee of Burns–Kish. As an employee, Kevin was not precluded from using information, knowledge, or skills gained during his employment with Burns–Kish and was allowed to make arrangements to compete before leaving Burns–Kish. *See McGlothen v. Heritage Envtl. Servs., LLC,* 705 N.E.2d 1069, 1072 (Ind.Ct.App.1999); *Potts v. Review Bd. of Ind. Employ. Sec. Div.,* 475 N.E.2d 708, 712 (Ind.Ct.App. 1985), *reh'g denied, trans. denied.* Without an employment agreement, Kevin is free to compete with his former employer,

and thus Plaintiffs have failed to prove a reasonable likelihood of success at trial.

## B. Remedies at Law are Inadequate

Next, Plaintiffs argue that the trial court erred in failing to consider evidence that Kevin's funeral home, Kish Funeral and Cremation Services, would cause confusion and irreparable harm to Burns–Kish. The trial court's findings on this issue provide:

40. Plaintiffs have also sought to enjoin Kevin Kish from using his name "Kish" in the operation of his new funeral home, claiming that Mr. Kish's use of his own name would cause confusion with Burns–Kish for potential customers. Plaintiff's [sic] did not introduce competent evidence that Kevin's use of his surname would cause confusion, or that the name "Burns–Kish" has secondary meaning in the funeral home business.

41. Tom Burns received a delivery at Burns–Kish Funeral Home that was supposed to go to Kevin Kish's funeral home. He also received calls from families with pre-needs contracts inquiring if Burns–Kish would remain open and honor the contracts. The newspaper contacted Mr. Burns and asked for a story about the new location. Finally, Mr. Burns claimed that unknown "families" came in this summer and said they saw he was putting up a new place. Tom Burns did not testify directly about any "confusion" on the part of any potential customer as to the identity of the two different funeral homes. Tom Burns' testimony regarding customer confusion is anecdotal, and no proper foundation has been laid for his opinions on that issue.

42. No competent evidence of a survey or study was introduced to suggest that confusion would exist due [to] any similarity in the names of the two funeral homes. Those names are "Burns–Kish Funeral Homes", and "Kish Funeral and Cremation Services".

43. Burns–Kish Funeral Homes, Inc. operates funeral homes in Hammond and Munster. Other funeral homes also operate in Lake County, Indiana using the name "Burns" within the names of the businesses.

Appellants' App. p. 18.

In attempting to prove that their remedies at law were inadequate and therefore they would suffer irreparable harm, Plaintiffs sought to introduce the expert testimony of Daniel Mark Isard, President of the Phoenix, Arizona-based Foresight Companies, LLC, which is a management consulting firm that specializes in serving funeral homes and cemeteries. Isard testified that Kish Funeral and Cremation Services would cause confusion with Burns–Kish, but the trial court ultimately rejected his testimony.

Indiana Evidence Rule 702(a) provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." We review the trial court's determination of whether a witness is qualified to testify as an expert for an abuse of discretion. *Pinkins v. State*, 799 N.E.2d 1079, 1087 (Ind.Ct.App.2003), *trans. denied.*

Isard, who has a master's degree in financial services and has experience in financial analysis, investment, accounting, and management, testified as follows at the hearing in this case:

I believe that there's going to be consumer confusion where families think

they're doing business with Burns–Kish and use [ ] "their new facility" [ ] and, therefore, the families are going to be confused, not knowing who exactly they're doing business with. And, therefore, I think that it's a—it's really creating a speculative issue, and I think that's impairing the value and the rights of the shareholders.

Appellants' App. p. 85. On cross-examination, Isard admitted that he had experience with only one case involving alleged name confusion, which was five years earlier in New Jersey. However, it became apparent through further questioning that the New Jersey case did not involve similarly named funeral homes. Rather, a married couple divorced, and the former husband and wife were operating separate funeral homes under their respective family names, Bongiovana and Papovera. Isard concluded that this would lead to confusion because of the "allegiance with the families as to what chapel to go to." Appellee Kish Funeral Homes, LLC's App. p. 38. In preparing for his testimony in that case, Isard consulted ten to fifteen affidavits prepared by one of the parties' attorney. When asked why, then, he thought he was qualified to speak as an expert witness on the topic of confusion in this case, Isard replied, "I wouldn't say that I'm here to talk about confusion. I'd say that I'm here to talk about the effects of goodwill and the effects upon a new competitor opening up with a name that is similar to the existing business." *Id.* at 39–40. The trial court then issued an oral ruling that it would not consider Isard's expert opinion testimony on the likelihood of confusion because it did not have a proper foundation in science. Appellants' App. p. 107.

The trial court did not abuse its discretion in not considering Isard's expert opinion testimony on the issue of likelihood of confusion between the two funeral homes because of the similarity in names. Isard simply does not have the qualifications to speak as an expert on the issue of confusion, as he himself said that he was not there to talk about confusion. In addition, Isard said his qualifications were limited to the New Jersey case, and that case did not deal with similarly named funeral homes and customer confusion. Rather, that case dealt with customer loyalty. Therefore, Isard's testimony was not helpful to the trier of fact and was properly excluded.

■ Nevertheless, Plaintiffs argue that even if Isard was not qualified as an expert witness under Evidence Rule 702, he was qualified as a skilled witness under Evidence Rule 701. Evidence Rule 701 provides:

If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

Here, however, Isard's opinion was not based on any fact he personally perceived in this case. Isard did not testify to any examples of confusion he perceived between the two Munster funeral homes. Rather, his opinion was based on his experience and assumptions. Accordingly, Isard's opinion testimony was not admissible under Indiana Evidence Rule 701.

■ The only testimony left, then, is Thomas's anecdotal testimony about confusion, and the trial court disregarded it, as it was entitled to do. We will not reweigh the evidence. The court was entitled to determine that there was no confusion, particularly because there are other funeral homes in Lake County with Burns in

the name.[5]

## II. Custodian over Burns–Kish

 Plaintiffs contend that the trial court erred in appointing a custodian over Burns–Kish pending a hearing on Patricia's counter-claim for judicial dissolution of Burns–Kish. Their sole argument is that the trial court cited the wrong statute in its Conclusions, the receivership statute, and therefore the appointment of the custodian was improper when applying the standard for appointment of a receiver. The trial court's Conclusions provide:

23. A receiver or custodian may be appointed by the Court when a corporation is in imminent danger of insolvency or if it is necessary, in the discretion of the Court, to secure ample justice to the parties. I.C. 32–30–5–1(5)(C) and I.C. 32–30–5–1(7).

24. A Court in a proceeding to dissolve a corporation may issue injunctions, appoint a receiver or custodian *pendente lite* with all powers and duties the Court directs, may take other action required to preserve the corporate assets, and carry on the business until a full hearing can be held. I.C. 23–1–47–2(c).

24. It is necessary and appropriate to appoint a custodian in this case to oversee the day-to-day operation of Burns–Kish Funeral Homes, Inc. so as to protect the assets of the corporation and the interests of Patricia Kish as a shareholder of the corporation while this litigation is pending, since a) the Plaintiffs have not demonstrated their intent to treat Patricia Kish as an equal shareholder of Burns–Kish Funeral Homes, Inc., b) Patricia Kish is entitled to 50% of all profits distributed and Thomas Burns has not treated her equally in distributions of profit from the corporation, c) Patricia Kish has the right to vote her 50% of shares outstanding regarding the affairs of the corporation, and d) Thomas and Jean Burns commenced this litigation without even consulting Patricia Kish, or calling a corporate meeting to discuss the issues raised in this suit.

Appellants' App. p. 26. It is true that the trial court's Conclusion No. 23 cites Indiana Code § 32–30–5–1, which governs only receiverships. However, Conclusion No. 24 cites Indiana Code § 23–1–47–2, which addresses both receivers and custodians *pendente lite*. Moreover, Conclusion No. 25 makes clear that the court appointed a custodian, *not* a receiver. Therefore, we will disregard the trial court's citation to Indiana Code § 32–30–5–1[6] and address the propriety of the court's appointment of a custodian over Burns–Kish.

Indiana Code § 23–1–47–1 provides that a circuit or superior court may dissolve a corporation in a proceeding by a shareholder if it is established that the shareholders are deadlocked in voting power and have failed, for a period that includes at least two consecutive annual meeting dates, to elect successors to directors

---

5. Because there is no competent evidence of name confusion, we do not analyze the various cases cited by Plaintiffs on this topic.

6. We note that in her counter-claim, Patricia did request the appointment of a receiver, which is probably why the trial court makes reference to the receivership statute. Nevertheless, the court appointed a custodian. Receivers and custodians play different roles. Receivers wind up and liquidate while custodians manage. *See* Ind.Code § 23–1–47–3. In addition, a receiver may only be appointed in certain circumstances, including when a corporation has been dissolved, is insolvent, is in imminent danger of insolvency, or has forfeited its corporate rights. *See* Ind.Code 32–30–5–1(5). Because the receivership statute does not apply here, we do not address these much stricter requirements.

whose terms have expired. Ind.Code § 23–1–47–1(2)(B). Indiana Code § 23–1–47–2, which the trial court cited in its conclusions, provides that a court in a proceeding brought to dissolve a corporation may issue injunctions, appoint a receiver or custodian *pendente lite* with all powers and duties the court directs, take other action required to preserve the corporate assets wherever located, and carry on the business of the corporation until a full hearing can be held. Ind.Code § 23–1–47–2(c). In addition, a court in a judicial proceeding brought to dissolve a corporation may appoint one or more custodians to manage the business and affairs of the corporation. Ind.Code § 23–1–47–3(a).

Here, Patricia filed a counter-claim against Thomas and Jean requesting judicial dissolution of Burns–Kish on grounds that its shareholders were deadlocked and had failed for a period including at least two consecutive annual meeting dates to elect successors to directors whose terms had expired. *See* Appellee Patricia Kish's App. p. 13. The trial court made the following findings:

50. Neither Patricia nor Thomas and Jean Burns have current majority control of corporate actions or spending, and the shareholders are without the ability to preserve corporate assets until a decision on dissolution is rendered by the Court.

51. The By-laws of the corporation require annual shareholder meetings to elect the Board of Directors. The Shareholders, Patricia owning 50% and Thomas and Jean ow[n]ing collectively 50%, have failed for a period that includes at least two consecutive meeting dates, to elect successors to the three deceased directors or to elect directors whose terms have expired..

52. The only way to secure ample justice to each shareholder *pendente lite* is to appoint a custodian. Given the nature of the family-run business, however, the powers of the custodian should be limited at this time.

Appellants' App. p. 20. As such, the trial court appointed Vern Seehausen, CPA as custodian over Burns–Kish with instructions to oversee the management of the corporation and gave him specific instructions. The court indicated its preference for resolving the deadlock "without the need for a judicial dissolution." *Id.* at 28.

The evidence shows that the shareholders are indeed deadlocked in voting power and have failed for a period that includes at least two consecutive annual meeting dates to elect successors to directors whose terms had expired. As the trial court found, "This suit in and of itself is evidence of an unworkable deadlock between equal shareholder parties." *Id.* at 19. And it appears that there have been no shareholder meetings since 1978. As such, the court properly appointed a custodian over Burns–Kish to preserve the corporate assets and to carry on the business until a full hearing on Patricia's counterclaim for judicial dissolution can be held. Appointment of a custodian is especially appropriate given the evidence of Thomas's history of making unauthorized and unequal distributions to himself.

In summary, the trial court did not abuse its discretion in denying Plaintiffs' request for a preliminary injunction and properly appointed a custodian over Burns–Kish pending a hearing on Patricia's counter-claim for judicial dissolution of Burns–Kish.

Affirmed.

MAY, J., and MATHIAS, J., concur.