**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**WILLIAM C. MOYER**
**GREGORY M. REGER**
Lorch & Naville, LLC
New Albany, Indiana

ATTORNEY FOR APPELLEE:

**ROBERT G. BOTTORFF, II**
Applegate Fifer Pulliam LLC
Jeffersonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ELIZABETH MAYNE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 31A05-1301-CT-5 |
| | ) | |
| O'BANNON PUBLISHING COMPANY, INC., | ) | |
| d/b/a CORYDON INSTANT PRINT, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HARRISON SUPERIOR COURT
The Honorable Susan L. Orth, Special Judge
Cause No. 31D01-1209-CT-35

**July 17, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Elizabeth Mayne appeals from the trial court's grant of a preliminary injunction against her and in favor of O'Bannon Publishing Company, Inc., d/b/a Corydon Instant Print (O'Bannon). Mayne presents the following consolidated and restated issues for review:

1. Did O'Bannon present a prima facie case that the five-year restriction on competition contained in Mayne's employment agreement was reasonable?

2. Was Mayne's employment agreement, specifically the non-compete provision, voided by the subsequent issuance of an employee handbook and Mayne's acknowledgment thereof?

We affirm.

O'Bannon is a corporation in Corydon that is in the business of newspaper publishing and commercial and consumer printing. O'Bannon's printing enterprise is operated under the trade name Corydon Instant Print (CIP), which has been in business for over twenty years. About thirty percent of CIP's business is from walk-ins, with the remainder from business accounts for items such as brochures, newsletters, stationery, and business cards. Saundra O'Bannon is the CFO and Vice Chairman Secretary of the Board for O'Bannon. She is also in charge of human resources.

In 2007, while searching for a manager for CIP, Sandra was introduced to Mayne, who had been operating a similar printing business in Louisville for some time. Mayne was in the process of closing her business and accepted a written offer of employment from O'Bannon. The offer was made contingent upon Mayne signing a non-compete agreement. Mayne executed the Employment Agreement and Covenant Not to Compete (the Employment Agreement) on March 12, 2007 and received a $1000 signing bonus. The

2

Contract provided in part:

> That upon the termination of the employment relationship between the Employee and the Corporation, the Employee will not directly or indirectly engage in any activity that competes with the Corporation in the printing business in Harrison County, Indiana or Crawford County, Indiana for a period of five (5) years following such termination of employment.

*Volume of Exhibits* at 6. In addition to her regular salary and benefits, O'Bannon paid Mayne a commission on printing jobs done for customers of her former business. O'Bannon also purchased a printing press from her.

Mayne began working as the manager of CIP on March 12, 2007. In addition to supervising one to two employees, Mayne was tasked with, among other things, increasing sales and revenue, securing competitive pricing from vendors, providing top-quality customer service, and pricing printing jobs. In particular, Mayne was the go-to person for CIP's business customers, as she offered direct, personal assistance to them. According to Mayne, she "gained the respect of many in the community along the way" and "customers loved [her]". *Id*. at 63. Mayne knew CIP's business clients and their printing needs well, and she maintained files on many of them.

On or about August 30, 2011, O'Bannon provided Mayne with an employee handbook, and Mayne executed a document acknowledging receipt of it. The handbook made clear that its purpose was to "provide employees with general guidelines regarding the current programs, policies, and benefits" and, further, that the handbook and any other policy statement "are not to be considered as contracts of employment for any specific period of time or for so long as certain conditions or circumstances exist, *nor are they intended to*

*create a contractual obligation of any kind, either express or implied.*" *Appendix* at 36 (emphasis supplied).

On May 28, 2012, Mayne resigned as manager of CIP. She allegedly took customer files with her and deleted certain files from the company computer. Further, in the months leading up to and then after her resignation, Mayne engaged in business activity in competition with O'Bannon under the trade name To Go Words until August 2012. She also negotiated an agreement to purchase Old Capital Printing Co. (Old Capital) from Clifford Gunther, whom Mayne had previously contacted on O'Bannon's behalf to purchase Gunther's business. Mayne and Gunther's purchase agreement took effect on September 4, 2012. Old Capital is a direct competitor and is within one-half mile of CIP.

After learning of Mayne's new endeavor, O'Bannon filed a six-count complaint against her on September 27, 2012. O'Bannon sought a preliminary injunction on the basis of the non-compete provision in the Employment Agreement. The court held a preliminary injunction hearing on November 20, 2012, at which Sandra O'Bannon and Mayne testified. On December 19, 2012, the trial court issued findings of fact and conclusions of law and granted O'Bannon's request for a preliminary injunction. Mayne now brings an interlocutory appeal of this order.

It is within the sound discretion of the trial court to grant or deny a preliminary injunction, and this court's review is limited to whether there has been a clear abuse of discretion. *State v. Econ. Freedom Fund*, 959 N.E.2d 794 (Ind. 2011), *cert. denied*. In this regard, we consider the evidence in the light most favorable to the judgment and construe

4

findings together liberally in favor of the judgment. *Burns-Kish Funeral Homes, Inc. v. Kish Funeral Homes, LLC*, 889 N.E.2d 15 (Ind. Ct. App. 2008).

> Generally, to obtain a preliminary injunction, a party must demonstrate the following four elements by a preponderance of the evidence: (1) there exists a reasonable likelihood of success at trial; (2) the remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; (3) the threatened injury to the movant outweighs the potential harm to the nonmovant from the granting of an injunction; and (4) the public interest would not be disserved by granting the requested injunction.

*State v. Econ. Freedom Fund*, 959 N.E.2d at 803. Only the first element is at issue in this appeal. In this regard, we must determine whether the likelihood of success on the merits is "so improbable as to render the trial court's determination erroneous as a matter of law." *Norlund v. Faust*, 675 N.E.2d 1142, 1149 (Ind. Ct. App. 1997) (noting that a party seeking a preliminary injunction need only establish a prima facie case), *trans. denied*.

1.

Mayne challenges the issuance of the preliminary injunction by claiming that O'Bannon failed to establish the validity of the covenant not to compete contained in the Employment Agreement. Specifically, she argues that the covenant not to compete upon which the injunction was based was unreasonable as a matter of law with respect to its five-year length. If so, O'Bannon cannot have established a reasonable likelihood of success at trial.

It has long been held in Indiana that covenants not to compete contained in employment contracts are in restraint of trade and disfavored by the law. *Central Ind. Podiatry, P.C. v. Krueger*, 882 N.E.2d 723 (Ind. 2008).

> We construe these covenants strictly against the employer and will not enforce an unreasonable restriction. To be enforceable, a noncompetition agreement must be reasonable. Unlike reasonableness in many other contexts, the reasonableness of a noncompetition agreement is a question of law. The employer also bears the burden of establishing that the agreement is reasonable in scope as to the time, activity, and geographic area restricted.

*Id*. at 729 (citations omitted). *See also Harvest Ins. Agency, Inc. v. Inter-Ocean Ins. Co.*, 492 N.E.2d 686, 688 (Ind. 1986) (reasonableness, in this context, "is a question of law which rests upon facts gleaned from the totality of the circumstances").

As set forth above, Mayne challenges as unreasonable only the temporal aspect of the covenant not to compete.[1] To be sure, five years is a lengthy period of time for these types of restrictions. We have, however, previously upheld such a duration against a reasonableness challenge in the context of an employee contract. *See Rollins v. Am. State Bank*, 487 N.E.2d 842 (Ind. Ct. App. 1986) (affirming denial of summary judgment, in part, because five-year restriction applicable to insurance agent could not be found unreasonable as a matter of law), *trans. denied*; *Miller v. Frankfurt Bottle Gas, Inc.*, 202 N.E.2d 395, 461 (Ind. Ct. App. 1964) (five-year restriction reasonable where employee "had a personal relationship with the customers with whom he dealt", "customers dealt with the appellant directly", and employer "depended essentially on *service* for its customers")(emphasis in original).

In the instant case, the facts reveal that Mayne had been in the printing business for more than two decades before she came to CIP. She closed her printing business in

---

[1] We note that Mayne relies heavily in her appellate briefs on *Dicen v. New Sesco, Inc.*, 806 N.E.2d 833 (Ind. Ct. App. 2004). Our Supreme Court granted transfer in *Dicen* on the issue regarding the covenant not to compete (summarily affirming several other issues). *See* 939 N.E.2d 684 (Ind. 2005). Accordingly, that portion of *Dicen* has been vacated and cannot be properly cited as authority. Ind. Appellate Rule 58(A)(2).

Louisville just prior to signing the Employment Agreement with CIP and receiving a $1000 signing bonus. Further, O'Bannon purchased at least one printing press from Mayne for use at CIP and paid her a commission, over and above her regular salary, for customers that she brought in from her prior business. As a condition of the employment offer, O'Bannon required Mayne's execution of a five-year covenant not to compete. This agreement extended only to Harrison County and Crawford County.[2]

During her more than five years as manager of CIP, Mayne worked closely and directly with CIP's customers, particularly its repeat business clientele. She was the face of CIP[3] and she knew the customers and their printing needs well. In her own words, "customers loved [Mayne]". *Volume of Exhibits* at 63. In sum, O'Bannon presented evidence that while providing hands-on service to CIP customers over the years, Mayne developed personal relationships with many of CIP's business customers.

In light of these facts, we conclude that O'Bannon presented a prima facie case regarding the reasonableness of the five-year restriction. O'Bannon's likelihood of success on the merits at trial is not "so improbable as to render the trial court's determination erroneous as a matter of law." *Norlund v. Faust*, 675 N.E.2d at 1149.

---

[2] We find disingenuous Mayne's assertion that the covenant not to compete would preclude her from pursuing printing as a means of support for five years. In fact, the provision in question would preclude her from setting up shop in only two Indiana counties, not in Kentucky where she previously owned and operated a printing business.

[3] From time to time, CIP employed one or two employees under Mayne. These employees were often teenagers and turnover appears to have been high.

2.

Mayne next makes a rather undeveloped argument based on the employee handbook. She claims that the Employment Agreement was superseded and voided by provisions of the handbook and acknowledgment.  We cannot agree.

The scope and purpose of the employee handbook is set out on the first page of the handbook:

> *The purpose of this handbook is to provide employees with general guidelines regarding the current programs, policies, and benefits* of O'Bannon Publishing Company, Inc.  You are expected to read, understand, and comply with all provisions of the handbook.  It also describes many of your responsibilities as an employee.
>
> This employee handbook, employment applications, and any other policy statements are not to be considered as contracts of employment for any specific period of time or for so long as certain conditions or circumstances exist, *nor are they intended to create a contractual obligation of any kind, either express or implied*.  Only the President of the Company, or any other officer duly authorized by the Board of Directors, has the authority to execute any contract of employment for a specific period of time.

*Appendix* at 36 (emphases supplied).

The handbook also expressly references the possibility of covenants not to compete: "As a condition of employment and continued employment with the Company, employees are required to sign such non-disclosure or non-compete agreements as may be required by the Company from time to time." *Id*. at 38.  Voiding the prior covenant not to compete would, in fact, be inconsistent with this provision of the handbook.  Moreover, a plain reading of these provisions makes clear that the handbook was not intended to supersede any existing covenant not to compete.

8

Mayne also directs us to the acknowledgment she signed upon receiving the handbook. It provided in part:

> f. that my signature below shows that I understand that this agreement of at will employment is the sole and entire agreement between me and O'Bannon Publishing Co., Inc. *concerning the duration of my employment and the circumstances under which my employment may be terminated*; it supersedes all prior agreements, understandings and representations concerning my employment with O'Bannon Publishing Co, Inc.

*Appendix* at 35 (emphasis supplied). Mayne fails to explain how this provision has anything to do with the covenant not to compete that she signed upon beginning employment with O'Bannon.

A review of the acknowledgement reveals that its purpose was to impress upon employees that the handbook had no effect on their employment-at-will status and to expressly reaffirm that status. Moreover, as emphasized above, the provision specifically references prior agreements concerning matters of duration and reasons for termination of employment, which are necessarily contrary to an employment-at-will agreement. The covenant not to compete is not related to these matters and is not superseded by the acknowledgment or at-will-employment agreement. Accordingly, the trial court properly determined that the handbook and acknowledgment had no effect on Mayne's covenant not to compete with O'Bannon.

Judgment affirmed.

ROBB, C.J., and CRONE, J., concur.

9