## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 21 2018, 6:11 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David Wemhoff
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Carl A. Greci
Faegre Baker Daniels LLP
Indianapolis, Indiana

Ryan G. Milligan
Faegre Baker Daniels LLP
Chicago, Illinois

# IN THE
# COURT OF APPEALS OF INDIANA

In re: Estate of Lester Frank Sumrall, Deceased

Lester L. Sumrall,

*Appellant/Petitioner,*

v.

Angela N. Grabowski,

*Appellee/Counter-Petitioner.*

May 21, 2018

Court of Appeals Case No. 71A05-1710-ES-2476

Appeal from the St. Joseph Probate Court

The Honorable James N. Fox, Judge

Trial Court Cause No. 71J01-1704-ES-68

**Bradford, Judge.**

# Case Summary

[1] Lester Frank Sumrall ("the decedent") died on April 28, 1996. On April 3, 2017, one of the decedent's grandsons, Appellant Lester L. Sumrall ("Appellant"), requested that the decedent's estate be opened and administered. Appellee Angela N. Grabowski ("Appellee"), the decedent's granddaughter, subsequently requested that the probate court deny Appellant's request to open the decedent's estate. Appellee argued that the decedent had been dead for over twenty years and that there were no estate assets to administer. The probate court conducted a hearing after which it granted judgment in favor of the Appellee. We affirm.

# Facts and Procedural History

[2] The decedent "founded LeSEA (Lester Sumrall Evangelistic Association) [("the ministry")] in 1957: A ministry which has subsequently given birth to well over one hundred books and study guides, eleven television stations, a satellite ministry, three FM radio stations, five shortwave stations reaching over ninety percent of the world's population, and a quarterly magazine." *See* https://lesea.com/about-us/legacy/ (last visited May 9, 2018). The ministry has continued to operate following decedent's death. The decedent died on April 28, 1996. At the time of his death, the decedent had three sons: Frank L. Sumrall, Stephen P. Sumrall, and Peter A. Sumrall. He was preceded in death by his wife.

On April 3, 2017, Appellant filed "Petition for Probate and Issuance of Letters of Administration and for Supervised Administration" of the decedent's estate. Appellant's App. Vol. II, p. 10. Appellant claimed to be "interested in the decedent's estate by reason of being the Attorney-In-Fact for Frank Lester Sumrall, the eldest son and heir of the decedent." Appellant's App. Vol. II, p. 10. In filing this petition, Appellant acknowledged that the time for filing the decedent's will had passed and that the decedent's estate should be administered as if the decedent died intestate. While the Appellant's request did not detail any specific assets or items of personal property, it indicated "[t]o the best knowledge of the [Appellant], and after diligent inquiry by the [Appellant], the estate of the decedent is believed to be solvent, included in such assets is a possible cause of action against entity(ies) and person(s)." Appellant's App. Vol. II, p. 12.

On April 21, 2017, Appellee filed a counter-petition in response to Appellant's petition. Specifically, Appellee responded as follows:

> [Appellee] is informed and so believes [d]ecedent's estate to be insolvent in that there are neither assets nor liabilities to administer. Decedent died nearly twenty-two years ago on April 28, 1996. [Appellee] knows of no assets that need [to be] administered, nor has any asset of the [d]ecedent been identified that needs [to be] administered. Further, [Appellee] knows of no cause of action concerning [d]ecedent or his estate that currently exists or that existed on [d]ecedent's date of death, nor has any cause of action been identified that needs to be pursued. In any event, to the extent any causes of action existed, such causes would be barred by the statute of limitations, whether such cause exists against or on behalf of [d]ecedent's estate.

Appellant's App. Vol. II, pp. 14–15.  In reiterating that decedent "has no estate assets to administer[,]" Appellee indicated that she "believes [Appellant] filed his Petition solely to give him a platform to bring frivolous causes of action personal to him on behalf of [d]ecedent's estate."  Appellant's App. Vol. II, p. 15.  Five of the six "interested parties and heirs by representation" joined in Appellee's counter-petition.[1]  Appellant's App. Vol. II, p. 17.

[5]  On July 13, 2017, the probate court conducted a hearing on the petition and counter-petition.  During the hearing, Appellant questioned four witnesses and gave a lengthy narrative regarding assets that he claimed to have observed in either 1996 or 2005.  Appellant also discussed (1) a tea set which had allegedly belonged to the decedent's wife and, at some point, had been given to a family member as a wedding present; (2) certain copyright interests relating to the ministry; and (3) a number of paintings.  Appellant, however, did not provide any evidence proving that either the copy right interests or the paintings were part of the decedent's estate.  At the close of Appellant's presentation of evidence, Appellee's counsel noted that Appellant did not specify any assets that he believed were still in the estate and "admitted that he had … concerns about assets moving in 2005" but did nothing to address these alleged concerns until 2017.  Tr. Vol. II, p. 82.  Thus, Appellee's counsel stated "I'd like to move, essentially, by analogy for a direct verdict."  Tr. Vol. II, p. 82.

---

[1] Appellant's father, Frank Lester Sumrall, was the only heir not to join Appellee's counter-petition.

[6]     Following lengthy argument by the parties, the probate court stated the following:

> I see little choice … but to, to grant the motion for judgment on the evidence, because I just don't, I'm not hearing that there's assets that clearly were [decedent's] assets or liabilities that need to be paid, that haven't been paid, or an asset, that was clearly his asset, that was to be distributed, in some manner distribute, that wasn't distributed. And in fact, I think when you called your Father, you never established that … there were things he believed should have been distributed, and that were his Father's.… I don't see any choice other than to issue a judgment on the evidence, because I just don't think you presented evidence that clearly indicate[s] to me, that, [items of personal property] that not only were in the house, but that they were assets of, that should have been distributed in the Estate[.]

Tr. Vol. II, pp. 91–92. The probate court also questioned "why nobody picked up the Estate and tried to move it forward, when somebody could have done [so] in the intervening time period." Tr. Vol. II, p. 92. Consistent with its oral ruling, the probate court subsequently entered a written order granting judgment in favor of the Appellee.

## Discussion and Decision

[7]     Appellant waited for more than twenty years following his grandfather's death before requesting that an estate be opened and administered. Appellee counters, arguing that the probate court should deny Appellant's request given his failure to make the request in a timely fashion.

It is a fundamental rule of law that one who sleeps on his rights loses them. Laches addresses delay in the pursuit of a right when a party must assert that right in order to benefit from it. The doctrine of laches "bars a party's rights when the party has unreasonably delayed their assertion so as to cause prejudice to the opposing party. In civil matters, the doctrine of laches consists of three elements: (1) inexcusable delay in asserting a right; (2) implied waiver from knowing acquiescence in existing conditions; and (3) circumstances resulting in prejudice to the adverse party. However, the mere passage of time is insufficient; the defendant must also show that the plaintiff's delay was unreasonable and that the defendant was prejudiced as a result.

*Hutchinson v. Spanierman*, 190 F.3d 815, 822–23 (7th Cir. 1999) (interpreting Indiana law, internal citations and quotations omitted). "Prejudice may be created if a party, with knowledge of the relevant facts, permits the passing of time to work a change of circumstances by the other party." *Burns-Kish Funeral Homes, Inc. v. Kish Funeral Homes, LLC*, 889 N.E.2d 15, 22 (Ind. Ct. App. 2008).

There is no doubt that Appellant delayed in requesting that the decedent's estate be opened and administered. By Appellant's own admission, he had knowledge of the decedent's personal property at the time of the decedent's death. Despite this knowledge, he waited more than twenty years before attempting to open and administer the decedent's estate. Appellant provided no reasonable explanation that would excuse his failure to seek to have the decedent's estate administered at some point during the twenty-plus years since the decedent's death. Further, to the extent that Appellant attempts to explain his delay by asserting that he had recently come to believe that the decedent's estate had not been distributed according to decedent's wishes, the record

reveals that Appellant has failed to point to any specific items that he believes were distributed contrary to decedent's wishes.

[10] Appellant's delay can also be interpreted as an implied waiver of any request for the establishment and administration of an estate. Appellant sat idly by and delayed in attempting to preserve any claimed interest that he or his father might have had in the property. This includes remaining silent after coming to believe that some of the decedent's personal property was moved or distributed in 2005. His twelve years of silence after allegedly learning that some of the property at issue had been distributed suggests a knowing acquiesce—if not outright approval—of the distribution.

[11] Furthermore, even if it were possible to reacquire the decedent's alleged personal property, doing so would undoubtedly result in prejudice as it would create insurmountable evidentiary issues. In this vein, the Appellee argues the following:

> [A]ny estate proceeding would necessitate attempting to (a) establish what assets belonged to [the decedent], (b) reconstruct over twenty years' worth of history regarding the possession and control of household items of personal property unaided by any public records, (c) locate and claw items back from heirs or distributes, such as the recipient of the 'multi piece tea set,' and (d) redistribute those purported assets. This exercise in futility is a waste of judicial and financial resources.

Appellee's Br. p. 23. We agree. The Indiana Supreme Court has noted that "[s]uccessful invocation of the doctrine [of laches] in civil cases has included

proof that available witnesses did not have a distinct recollection of the details of the case or that they had no access to records which would disclose the same." *In re Siegel*, 708 N.E.2d 869, 871 (Ind. 1999) (citing *French v. State*, 547 N.E.2d 1084, 1088 (Ind. 1989)). The evidentiary issues that would stem from attempting to establish ownership of personal property that has been distributed over the course of more than twenty years would undoubtedly result in prejudice to those adverse to the Appellant's position as it is unlikely that there would be any records of distribution or that any witness would have a clear recollection of all of the details surrounding the distribution of the property.

[12] The judgment of the probate court is affirmed.

Baker, J., and Kirsch, J., concur.